## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**RICHARD N. BONDS, on behalf of
the Flat Rock Metal and Bar
Processing Employee Stock
Ownership Plan, and on behalf of a
class of all other persons similarly
situated,**

|  |  |
|---|---|
| | Case No. _____ |
| **Plaintiff,** | Hon. _____ |
| **v.** | |
| **RICHARD A. HEETER, CAPITAL
TRUSTEES, LLC, PETER F.
SHIELDS, PAUL J. LANZON II, and
JOHN DOES 1-10,** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiff Richard N. Bonds, by his undersigned attorneys, on behalf of the Flat Rock Metal and Bar Processing Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.     Plaintiff Richard N. Bonds ("Plaintiff") brings this suit against Richard A. Heeter and his company Capital Trustees, LLC ("CapTrustees," and together with Heeter, "the Trustee"), the fiduciary trustee for the Flat Rock Metal and Bar Processing Employee Stock Ownership Plan (the "Plan" or "the ESOP") when the Plan acquired shares of SAC Ventures, Inc. ("SAC" or "the Company") in 2020; and Peter F. Shields, Paul J. Lanzon II, and John Does 1-10 (together, "Selling Shareholders"), parties in interest to the Plan from whom the Plan acquired SAC stock.

2.     Plaintiff is a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan who was vested under the terms of the Plan in shares of SAC allocated to his account in the Plan.

3.     This action is brought under Sections 404, 405, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when it caused the Plan to buy shares of SAC for more than fair market value and thereby misused the Plan's money to the benefit of Selling Shareholders, and other plan-wide relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, SAC was a privately held company and the Plan's sponsor. SAC adopted the Plan effective retroactively as of January 1, 2020. In or about November 2020, the Plan, through its trust, the Flat Rock Metal and Bar Processing Employee Stock Ownership Trust ("ESOT"), purchased from party in interest Selling Shareholders, directly or indirectly, 1,002,485.3 shares of SAC common stock for $60,344,950, which was financed by a $60,344,950 term loan agreement with SAC (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, the Plan, through its ESOT, became owner of 100% of SAC's outstanding common stock.

6.      The Trustee represented the Plan and its participants as fiduciary trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf. The stock and loan transactions that the Trustee caused the Plan to enter into with parties in interest were prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

7.      The ESOP Transaction allowed Selling Shareholders to unload their interests in SAC above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt over a 30-year repayment period to

finance the Transaction. The Trustee failed to fulfill its ERISA duties, as trustee and fiduciary, to the Plan and its participants, including Plaintiff.

8.     Selling Shareholders sold shares in the ESOP Transaction and received the Plan's monetary assets in the Transaction. Selling Shareholders are liable under ERISA for knowingly participating in the prohibited stock transaction and the Trustee's breaches of fiduciary duty under ERISA. Two Selling Shareholders— Peter F. Shields and Paul J. Lanzon II—are liable under ERISA as co-fiduciaries to the Trustee who participated in, enabled, and did not make reasonable efforts to remedy the Trustee's breaches of fiduciary duty.

9.     Through this action, Plaintiff seeks to enforce his rights under ERISA and the Plan, to recover the losses incurred by the Plan and the improper profits realized by Defendants resulting from their causing prohibited transactions and breaches of fiduciary duty, knowingly participating in the prohibited stock transaction and breaches of fiduciary duty, and failing to meet their duties as co-fiduciaries, and equitable relief, including reformation of Transaction contracts, rescission of the Transaction, and removing Defendants as fiduciaries and enjoining them from acting as fiduciaries for any employee benefit plan that covers or includes any SAC employees or members of the Class. Plaintiff requests that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge to the

Plan any improper profits, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Defendants to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA; to obtain appropriate equitable relief against Defendants; to restore to the Plan any profits that have been made by breaching fiduciaries, parties in interest, or others through the receipt or use of Plan assets in violation of ERISA; and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and it has original jurisdiction pursuant to 28 U.S.C. § 1331.

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District.

## PARTIES

13.    Plaintiff Richard N. Bonds is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the effective date of the Plan. Plaintiff resides in Southgate, Michigan. He was a Maintenance Technician at Flat Rock Metal, Inc. He was employed there from on or about November 2010 to August 2022. He was vested in shares of SAC in his Plan account.

14.    Defendant Richard A. Heeter is the Managing Director, Principal, and Founder of CapTrustees. Defendant Heeter's business address is at Capital Trustees, LLC, 1013 Mumma Road, Lemoyne, Pennsylvania 17043.

15.    Defendant Richard A. Heeter was the trustee of the Plan at the time of the ESOP Transaction. The ESOT Trust Agreement he entered into with SAC was effective as of January 1, 2020. As the Plan's trustee, Defendant Heeter had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan.

16.    Defendant Capital Trustees, LLC ("CapTrustees") is a Pennsylvania Limited Liability Company founded in 2012. CapTrustees bills itself as "an independent trustee and fiduciary" that "serves as ongoing trustee to over 40 ESOP companies" and "serves as transaction trustee." CapTrustees' headquarters is at 1013 Mumma Road, Lemoyne, Pennsylvania 17043.

17.     Defendant CapTrustees was at all relevant times Defendant Richard A. Heeter's company and is the name of his practice. CapTrustees was the trustee of the Plan at the time of the ESOP Transaction. As trustee, CapTrustees had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan. CapTrustees acted in the ESOP Transaction through Defendant Heeter. CapTrustees provides a team to execute ESOP transactions, office space, a routine due diligence process, and insurance. CapTrustees advertises: "The professional team at Capital Trustees has extensive business experience, which allows them to efficiently and effectively fulfill their fiduciary duties."

18.     At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. As Plan trustee, the Trustee was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained.

19.     Defendant Peter F. Shields was at the time of the ESOP Transaction a Director and/or President of SAC, which had employees covered by the Plan. At the time of the ESOP Transaction, he was a Director and/or President of SAC subsidiaries Flat Rock Metal, Inc., Steel Dimensions, Inc., and Custom Coating Technologies, Inc., all of which had employees covered by the Plan. At the time of the ESOP Transaction, he was a Director of SAC subsidiary Bar Processing Corporation, which had employees covered by the Plan. He was a Selling Shareholder in the ESOP Transaction. Upon information and belief, Defendant Peter F. Shields resides in Boyne City, Michigan.

20.     Defendant Peter F. Shields was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a SAC director and/or officer; a 10 percent or more shareholder of SAC, directly or indirectly; a director and/or officer of Flat Rock Metal, Inc., Steel Dimensions, Inc., and/or Custom Coating Technologies, Inc; a director of Bar Processing Corporation; a Plan fiduciary; and/or as a "relative," within the meaning of 29 U.S.C. § 1002(15), of Paul J. Lanzon II.

21.     Defendant Paul J. Lanzon II was at the time of the ESOP Transaction Treasurer, Chief Executive Officer (CEO), and/or Director of SAC. At the time of the ESOP Transaction, he was Secretary, CEO, and/or Director of Bar Processing Corporation. At the time of the ESOP Transaction, he was Treasurer, CEO and/or

Director of Flat Rock Metal, Inc., Steel Dimensions, Inc., and Custom Coating Technologies, Inc. He was and is the son-in-law of Defendant Peter F. Shields. On information and belief, he was a Selling Shareholder in the ESOP Transaction and resides in Birmingham, Michigan.

22.     Defendant Paul J. Lanzon II was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as a SAC officer and/or director; a 10 percent or more shareholder of SAC, directly or indirectly; an officer and/or director of Bar Processing Corporation, Flat Rock Metal, Inc., Steel Dimensions, Inc., and/or Custom Coating Technologies, Inc; and/or a Plan fiduciary.

23.     Defendants Peter F. Shields and Paul J. Lanzon II, members of the Board of Directors of SAC, had at all relevant times fiduciary power to appoint and remove other Plan fiduciaries, to wit, the Plan's trustee and Retirement Committee, and were fiduciaries as directors of the Plan Administrator, SAC. Defendants Peter F. Shields and Paul J. Lanzon II, as members of SAC's Board of Directors, were named fiduciaries under the Plan within the meaning of Section 402(a) of ERISA, 29 U.S.C. § 1102(a), with respect to their appointment and removal of the Trustee, review of the Trustee's performance, and adoption and amendment of the trust agreement. At the time of the ESOP Transaction, Defendants Peter F. Shields and Paul J. Lanzon II were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A) because they exercised discretionary authority or discretionary control

respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

24.     Defendants John Does 1-10 are other parties in interest to the Plan who sold the Plan SAC stock in the ESOP Transaction, whose identities are unknown to Plaintiff. Once their identities are ascertained, Plaintiff will substitute their names.

## FACTUAL ALLEGATIONS

25.     SAC—formerly named Shields Acquisition Company, Inc. and Shield/BP Acq., Inc.—is a holding company in the steel processing industry, whose subsidiaries and affiliates include Flat Rock Metal, Inc., Bar Processing Corporation, Steel Dimensions, Inc., and Custom Coating Technologies, Inc. Prior to the ESOP Transaction, SAC was owned by members of the Shields Family. Defendant Peter F. Shields is the founder of Flat Rock Metal, Inc. and SAC.

26.     Founded in 1981, Flat Rock Metal, Inc. is a steel processor based in Flat Rock, Michigan. Flat Rock Metal, Inc. was incorporated in Michigan on July 8, 1981.

27.     SAC was incorporated in Michigan on September 22, 1998. SAC is an S corporation.

28.     SAC is headquartered at 26601 West Huron River Drive, Flat Rock, Michigan 48134. That address is the Plan Administrator's address.

29.    SAC common stock is not and never was readily tradeable on an established securities market.

30.    SAC adopted the Plan with a retroactive effective date of January 1, 2020.

31.    The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

32.    The Plan is intended to be an employee stock ownership plan (ESOP) within the meaning of Code Section 4975(e)(7) and Section 407(d)(6) of ERISA, 29 U.S.C. § 1107(d)(6). The Plan was designed to invest primarily in the employer securities of SAC.

33.    The Plan's principal asset was SAC common stock at all times since the ESOP Transaction.

34.    The Plan is an individual account plan, or defined contribution plan, under which a separate individual account is established for each participant.

35.    SAC is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Qualifying SAC employees are covered under the Plan.

36.    Under the Plan, Flat Rock Metal, Inc., Bar Processing Corporation, Steel Dimensions, Inc., and Custom Coating Technologies, Inc. are Affiliated

Employers, which are affiliated organizations with SAC that elected to cover their employees under the Plan with the consent of SAC. Flat Rock Metal, Inc., Bar Processing Corporation, Steel Dimensions, Inc., and Custom Coating Technologies, Inc. were Affiliated Employers under the Plan effective January 1, 2020.

37.     The Plan covers substantially all employees who have completed 1,000 hours of service, are age 18 or older, and are employed on the last day of the year.

38.     The Plan's Forms 5500 identify SAC as the sponsor and administrator of the Plan.

39.     The Plan's Summary Plan Description (reflecting the terms of the Plan in effect on January 1, 2020) ("SPD") discloses that SAC is the administrator of the Plan. SAC's Board of Directors has appointed a Retirement Committee to act as its agent in performing SAC's administration and management duties to the Plan.

40.     SAC is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

41.     SAC is and was an ERISA fiduciary to the Plan as its administrator.

42.     SAC is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

43.     The Plan's participants are current or former employees of SAC, Flat Rock Metal, Inc., Bar Processing Corporation, Steel Dimensions, Inc., and Custom Coating Technologies, Inc.

44.     Defendants Peter F. Shields and Paul J. Lanzon II conducted a selection process for ownership transition of SAC from the Shields Family and decided to develop an ESOP at SAC. Defendants Peter F. Shields and Paul J. Lanzon II were centrally involved in conceiving of, facilitating, and executing the Transaction, while working with the exclusive financial advisor to SAC and its subsidiaries, Greenwich Capital Group LLC, which acts as the "quarterback" of ESOP teams and retains trustees and other professionals. Defendants Peter F. Shields and Paul J. Lanzon II were involved in directing the preparation of financial statements and projections by their team of subordinate management for use in valuations in the Transaction, and approving SAC's lending of $60,344,950 in the fully leveraged transaction.

45.     "[T]he ESOP world [is] a very incestuous community" because of the "significant long-term business relationships" resulting from parties working together in many ESOP deals, and ESOP trustees maintain "extensive and lucrative business relationships" with seller-side advisors. *See Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 771, 779 (4th Cir. 2019) (citation omitted).

46.     Defendant Richard A. Heeter has admitted that other professional advisors in his industry—including third party firms, ESOP attorneys, and valuation advisors—have been a very big source of referrals to CapTrustees and had a hand in the growth of his company.

47.     SAC's Board of Directors appointed the Trustee to be the buyer-side trustee on advice of the seller-side ESOP advisor Greenwich Capital Group LLC. Defendants Paul J. Lanzon II and Richard A. Heeter signed the ESOT Trust Agreement. An unconflicted independent fiduciary did not make the appointment.

48.     The directors of SAC, including Defendants Peter F. Shields and Paul J. Lanzon II, had a duty to monitor the Trustee's performance as trustee of the Plan.

49.     The SAC Board of Directors appointed the Trustee as trustee of the Plan prior to the ESOP Transaction at a time when Selling Shareholders and the Shields Family owned and controlled the company and its Board of Directors. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for SAC stock. Defendants Peter F. Shields and Paul J. Lanzon II, who were the seller-side in the ESOP Transaction and company directors, therefore appointed the buyer-side counter-party trustee in the Transaction.

50.     The Trustee received fees from SAC for its services as transaction trustee in the ESOP Transaction to the buyer-side Plan under a contract made under Selling Shareholders' ownership and control of SAC. The Trustee also received fees after the ESOP Transaction because it was appointed ongoing trustee to the Plan.

51.     As trustee for the Plan, it was the Trustee's duty to ensure that any transactions between the Plan and Selling Shareholders and between the Plan and

SAC, including acquisitions of SAC stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value. Under the ESOT Trust Agreement, "[a]ll purchases and sales of Company Stock shall be made at a price not less favorable to the Trust than fair market value as determined in good faith by the Trustee." Under the ESOT Trust Agreement: "The Trustee shall have the authority to contract or otherwise enter into transactions for the purpose of acquiring or selling Company Stock, including transactions with the Company or any Company shareholder, and to borrow money from any lender (including the Company) to finance the acquisition of Company Stock, giving its Note as Trustee."

52.    In or about November 2020, the Plan, by its ESOT, purchased from Selling Shareholders, directly or indirectly, including but not limited to from the Selling Shareholders' trusts, 1,002,485.3 shares of SAC common stock for $60,344,950. At that time, SAC became employee-owned through the ESOP and ESOT.

53.    The Plan's purchase of the SAC shares was financed by a $60,344,950 term loan agreement with SAC. The note bears interest at 1.17 percent and matures in 2050.

54.    The parties resorted to financing by seller-controlled SAC because they were unable to arrange bank financing for the ESOP Transaction. Prospective bank

lenders would have been troubled by the fact that the proposed ESOP Transaction would be 100% leveraged. A prudent bank would not have financed the transaction at the $60,344,950 value without conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was actually worth $60,344,950. Because the parties could not obtain, or knew they could not obtain, bank financing for the transaction, they "financed" the transaction through the Company with a note payable. In violation of ERISA and the terms of the Plan, the loan was not primarily for the benefit of participants and beneficiaries of the Plan, but rather was arranged in the interest of the Selling Shareholders to provide the liquidity enabling them to divest themselves of the Company with the Plan's purchase of their shares in the prohibited and above-fair-market-value ESOP Transaction.

55.    The Plan's Forms 5500 report that the Plan's investment in SAC common stock and financial obligations to the Company from the loan were party in interest transactions.

56.    Defendants Peter F. Shields and Paul J. Lanzon II were principal officers and directors of SAC and its subsidiaries at the time of the ESOP Transaction and they have maintained firm control over the companies since the Transaction. Defendants Peter F. Shields and Paul J. Lanzon II were very involved in the management of SAC and its subsidiaries. The Selling Shareholders at all relevant times controlled SAC and its subsidiaries as directors and officers and as

members of the Shields Family; through Defendant Peter F. Shields and his son-in-law Defendant Paul J. Lanzon II, who is CEO and Director of SAC and its subsidiaries; through employees, appointees, and/or proxies holding positions as directors and/or officers; due to the millions of dollars of debt they held from the ESOP Transaction including but not limited to rights arising from warrants or other synthetic equity issued to Selling Shareholders; through various transaction documents, including the stock purchase agreement and warrants; and through a compliant trustee that could be fired by SAC or its Board of Directors.

57.    Defendant Peter F. Shields has a history of breaching his fiduciary duties for his own personal gain, as held by the Court of Appeals of Michigan. *See Prod. Finishing Corp. v. Shields*, 405 N.W.2d 171, 173, 175 (Mich. Ct. App. 1987) (per curiam).

58.    Despite the change of ownership, after the ESOP Transaction SAC's subsidiaries announced to customers: "The sale to the employees will result in *no change in management, our business operations and, most importantly, our relationship with you*."

59.    The Plan and its participants did not take control of SAC from Selling Shareholders following the ESOP Transaction.

60.    The Trustee valued the SAC stock on a control basis by using an industry capital structure instead of the Company's actual capital structure in its

income method, which yielded a control value. But the Plan did not obtain control of the Company, as explained above, because Selling Shareholders maintained control over the board of directors and, through the board, SAC. The Plan should have received a discount for lack of control, but it did not. This means the Plan paid more than fair market value for the stock.

61.     The Trustee's appraisal of SAC stock in the ESOP Transaction used income valuation techniques. SAC management provided financial statements and projected cash flow and net income to the Trustee for the valuation in the ESOP Transaction. The financial projections were unreasonably optimistic. The Plan overpaid for SAC stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections. The Trustee did not adequately challenge information provided by SAC management or the valuation techniques of its financial advisor and therefore failed to negotiate for the true, lower fair market value price of SAC stock as of the date of the ESOP Transaction.

62.     The appraisal used by the Trustee in the ESOP Transaction used market valuation techniques. The appraisal derived value based on supposedly comparable companies to SAC. But the selected comparable companies were too dissimilar to SAC to provide a reliable indication of value. Moreover, the discounts applied to the selected multiples derived from the purportedly comparable companies were arbitrary and insufficient to reflect the fair market value of SAC, yielding a market

based value that substantially overstated the fair market value of SAC. Among other things, selected comparable companies differed from SAC in financial size, as more diversified, and not suffering the same customer concentration risk. Thus, the use of market comparables that were not a good match to SAC caused the stock to be overvalued and the ESOT to overpay.

63.     The Trustee failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation in the ESOP Transaction because it failed to sufficiently account for the lack of marketability for the stock that was purchased by the ESOT. The valuation applied an insufficient DLOM because Plan participants, beneficial owners rather than legal owners, have a right to demand that the company buy any shares of its stock distributed to participants for which there is no market (the "put option"). But the Plan was the purchaser in the ESOP Transaction and the participants' put option did not reduce the lack of marketability to the ESOT of the stock the ESOT owned. In addition, the Plan's lack of control over SAC made it lack marketability. The Plan overpaid for SAC stock in the ESOP Transaction due to the Trustee's improper application of DLOM.

64.     The Plan permits "Synthetic Equity," which means: "any stock option, warrant, restricted stock, deferred issuance stock right, deferred compensation, or similar interest or right that gives the holder the right to acquire or receive stock of the S Corporation in the future" and, subject to the Treasury Regulations, "a stock

appreciation right, phantom stock unit, or similar right to a future cash payment based on the value of such stock or appreciation in such value."

65.     Synthetic equity is usually granted to high level executives by the board of directors. Here, Defendants Peter F. Shields and Paul J. Lanzon II were both high level executives and on the Board in the relevant period.

66.     When synthetic equity is granted, it dilutes the value of company shares held by ESOP participants and transfers that value to those persons holding the synthetic equity. Thus when synthetic equity is granted, it reduces the value of the SAC shares owned by the Plan. This either harms the economic interest of Plan participants or, if the synthetic equity is not properly taken into account in the valuation of SAC stock, the stock is reported at inflated values.

67.     A rational buyer under no compulsion to purchase SAC under terms like these (*i.e.*, a Board controlled by the Shields Family who could dilute the value of all SAC stock by granting their members synthetic equity) would not have purchased the company stock that the ESOP was forced to purchase, or would have demanded a massive discount in the price of the stock to account for these defects of ownership.

68.     Warrants, a type of synthetic equity permitted under the Plan, may be issued to selling shareholders in or following an ESOP transaction. Warrants can allow selling shareholders to receive an amount over and above fair market value for

their companies, which can be as much as 20 or 30 percent of the entire business, which over the course of a decade can be worth more than the entire business was worth the day the selling shareholders sold it. The value of the warrant is manipulable because a warrant is the right to buy shares in the business at a price that is agreed-upon. Warrants thus may give selling shareholders who take debt for the sale of their companies in ESOP transactions compensation above and beyond the amount of the interest rate on the loan paid by an ESOP.

69.    The Plan overpaid for SAC, and Selling Shareholders received improper profits, as a result of warrants issued to them. A rational buyer under no compulsion to purchase SAC would not have agreed to the warrants upon its purchase of SAC stock.

70.    While the Plan had paid $60,344,950 for the 1,002,485.3 shares of SAC common stock, the stock was revalued at $3,649,046 as of December 31, 2020. As of December 31, 2021, the Plan's SAC stock was revalued at $17,152,523, after contributions by SAC to the Plan. The Plan paid an inflated price due to the Trustee's improper investigation into the value of SAC stock as of the date of the ESOP Transaction and its failure to negotiate payment of no more than fair market value.

71.    In breach of their duty of loyalty to plans and their participants and beneficiaries, ESOP trustees have defined and employed deficient "industry" standards for themselves alone that deviate from sound business practices employed

by non-ESOP buyers in the so-called "real world" and required by ERISA. In accordance with its and "industry" routine practices, the Trustee's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. Incentives to the Trustee to fail to exercise care, skill, prudence and diligence in the interest of Plan participants and beneficiaries in the ESOP Transaction by failing to apply sound business principles of evaluation and to conduct a prudent investigation and negotiation included the possibility of business from sellers of companies who understood that the Trustee applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, referrals for such work by other service providers in the ESOP creation and administration business such as Greenwich Capital Group LLC, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

72.    The Plan suffered losses due to the overvaluation of SAC stock in the ESOP Transaction and its overpayment for the stock, in an amount to be determined following discovery and expert analysis of non-public information concerning the Trustee's and its financial advisor's valuation and due diligence methodologies, SAC financials and growth projections, and other documents and information that were considered or should have been considered in the ESOP Transaction.

73.     Due to the Plan's overpayment, the Plan's participants, whose losses are coterminous with the Plan's, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered losses to their individual Plan accounts.

74.     The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of SAC shares at the time of the ESOP Transaction.

75.     Defendants Peter F. Shields and Paul J. Lanzon II, as co-fiduciaries, are liable to the Plan for the difference between the price paid by the Plan and the fair market value of SAC shares at the time of the ESOP Transaction.

76.     Selling Shareholders are liable to the Plan to repay the difference between the price they each received and the fair market value of their SAC shares at the time of the ESOP Transaction.

### CLAIMS FOR RELIEF

### COUNT I
**Causing Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Richard A. Heeter and Capital Trustees, LLC**

77.     Plaintiff incorporates the preceding paragraphs 1-76 as though set forth herein.

78.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee, Defendants Heeter and CapTrustees, from causing a

plan, here the Plan, to engage in a sale or exchange of any property, here SAC stock, with a party in interest, here Selling Shareholders, as took place in the ESOP Transaction.

79.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here SAC, as took place in the ESOP Transaction.

80.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Selling Shareholders, of any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to Selling Shareholders as payment for SAC stock.

81.    The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in its capacity as trustee for the Plan.

82.    The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

83.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made

through the use of assets of the plan by the fiduciary, and additionally is subject to

such other equitable or remedial relief as the court may deem appropriate, including

removal of such fiduciary.

84.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant

to bring a suit for relief to a plan under ERISA § 409.

85.    The Trustee has caused losses to the Plan by the prohibited transactions

in an amount to be proved specifically at trial.

**COUNT II**
**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a),**
**Against Richard A. Heeter and Capital Trustees, LLC**

86.    Plaintiff incorporates the preceding paragraphs 1-85 as though set forth

herein.

87.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a

plan fiduciary discharge his or her or its duties with respect to a plan solely in the

interest of the participants and beneficiaries, (A) for the exclusive purpose of

providing benefits to participants and the beneficiaries of the plan and defraying

reasonable expenses of administering the plan, (B) with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent person acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise

of a like character and with like aims, and (D) in accordance with the documents and

instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

88.   The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

89.   ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

90.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

91.   The Trustee was required to undertake an appropriate and independent investigation of the fair market value of SAC stock in or about November 2020 in order to fulfill its fiduciary duties, and an appropriate investigation would have

revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the SAC stock purchased by the Plan.

92.    The Trustee was required to act independently on behalf of the Plan, to probe and question projections and other information provided by SAC management, and it did not adequately do so.

93.    The Trustee was required to negotiate for the Plan to pay no more than fair market value for SAC stock in the ESOP Transaction, and it failed to do so, but instead approved the imprudent Transaction.

94.    The Trustee breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

95.    The Trustee has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III
### Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3), Against Selling Shareholders

96.    Plaintiff incorporates the preceding paragraphs 1-95 as though set forth herein.

97.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan.

98.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

99.    As a result of the prohibited stock transaction and breaches of fiduciary duty described above, Selling Shareholders received Plan assets in payment above fair market value for their SAC stock.

100.    Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

101.    Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their SAC stock in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that they had the statuses that made them parties in interest, (5) that the Trustee caused the Plan to engage in the stock transaction, and (6) that they received monetary assets of the Plan in the ESOP Transaction.

102.    As parties to the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by the Trustee on behalf of the ESOT; as sellers of stock with an interest in having knowledge of and competently negotiating the Transaction; as owners of a family business that

they were divesting themselves of to employees; as to Defendants Peter F. Shields and Paul J. Lanzon II, as directors and officers of SAC, which participated in the $60 million dollar loan component of the Transaction with their approval, and which was the sponsor and fiduciary administrator of the Plan; as to Defendants Peter F. Shields and Paul J. Lanzon II, as Plan fiduciaries; as to Defendants Peter F. Shields and Paul J. Lanzon II, as appointers of the Trustee to be the Plan's trustee, who therefore bore a fiduciary duty to monitor the trustee; and as to as to Defendants Peter F. Shields and Paul J. Lanzon II, as principal officers whose team provided company information to the buyer side, Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction. Further, Selling Shareholders were aware of sufficient facts that the Plan paid more than fair market value in the Transaction and that the Trustee did not adequately investigate and value the stock.

103.    Selling Shareholders are liable for knowingly participating in violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D), alleged in Count I.

104.    Selling Shareholders are liable for knowingly participating in violations of ERISA § 404(a), 29 U.S.C. § 1104(a), alleged in Count II.

105.   Selling Shareholders profited from the prohibited stock transaction in an amount to be proven at trial, and upon information and belief, they remain in possession of assets that belong to the Plan.

106.   Selling Shareholders are subject to appropriate equitable relief including disgorgement or restitution of any ill-gotten gains they received in connection with the ESOP Transaction, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for SAC stock as of the date of the Transaction and to give the Plan powers or other consideration for which it paid but did not receive, having the transaction rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT IV
### Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a), Against Peter F. Shields and Paul J. Lanzon II

107.   Plaintiff incorporates the preceding paragraphs 1-106 as though set forth herein.

108.   ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in,

or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

109.   ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

110.   ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

111.   Defendants Peter F. Shields and Paul J. Lanzon II were members of the SAC Board of Directors with authority to appoint and remove the fiduciary Trustee and the fiduciary Retirement Committee and to control the Plan Administrator SAC, and thus they were fiduciaries with respect to the Plan at the time of the ESOP Transaction.

112.   A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations and must take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

113.   Defendants Peter F. Shields and Paul J. Lanzon II, who were directors of SAC, breached their fiduciary duty to monitor the Trustee by failing to adequately

monitor the Trustee's performance or have a system in place for doing so and standing idly by as the ESOP suffered losses as a result of the Trustee's fiduciary violations with respect to the ESOP Transaction.

114.   As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), Defendants Peter F. Shields and Paul J. Lanzon II are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

115.   Further, given their participation in the ESOP Transaction, as stated above, their positions as Directors, their access to company financial information, their appointment of the Trustee, and their positions as principal officers, Defendants Peter F. Shields and Paul J. Lanzon II knew or should have known of the fiduciary breaches of the Trustee in connection with its faulty due diligence and imprudent approval of the stock purchase for more than fair market value, and Peter F. Shields and Paul J. Lanzon II knowingly participated in the Trustee's fiduciary breaches as participants in the stock transaction and as persons controlling SAC, which participated in the loan transaction, and enabled the Trustee's fiduciary breach by themselves failing to monitor as required of an appointing fiduciary.

116.   As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), Peter F. Shields and Paul J. Lanzon II are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

117.    Defendants Peter F. Shields and Paul J. Lanzon II failed to make reasonable efforts to remedy the Trustee's violations of ERISA associated with the ESOP Transaction despite knowing of such violations, such as preventing the Plan's overpayment, reimbursing the Plan, or bringing the matter to the attention of the Secretary of Labor.

118.    Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), Defendants Peter F. Shields and Paul J. Lanzon II are liable as co-fiduciaries for the Plan's losses resulting from the Trustee's fiduciary breaches.

## CLASS ACTION ALLEGATIONS

119.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All vested participants in the Flat Rock Metal and Bar Processing Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the November 2020 ESOP Transaction or any time thereafter. Excluded from the Class are the shareholders who sold their SAC Ventures, Inc. ("SAC") stock to the Plan, directly or indirectly, and their immediate families; the directors and officers of SAC, Flat Rock Metal, Inc., Bar Processing Corporation, Steel Dimensions, Inc., and Custom Coating Technologies, Inc., and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

120.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2021, there were 411 participants in the Plan.

121.    Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i.      Whether Defendants Heeter and CapTrustees served as trustee in the Plan's acquisition of SAC stock;

ii.     Whether the Trustee was an ERISA fiduciary of the Plan;

iii.    Whether the Trustee caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase SAC stock and take a loan from parties in interest;

iv.     Whether the Trustee engaged in good faith valuations of SAC stock in connection with the ESOP Transaction;

v.      Whether the Trustee caused the Plan to pay more than fair market value for SAC stock;

vi.     Whether the Trustee breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of SAC stock on or about November 2020;

vii.    Whether SAC was a party in interest and gave a loan to the Plan;

viii.   Whether Selling Shareholders were parties in interest;

ix.     Whether Selling Shareholders knowingly participated in the prohibited stock transaction and breaches of fiduciary duty;

      x.     Whether Defendants Peter F. Shields and Paul J. Lanzon II were fiduciaries;

      xi.     Whether Defendants Peter F. Shields and Paul J. Lanzon II are liable as co-fiduciaries for the fiduciary breaches by the Trustee;

      xii.     Whether Defendants Peter F. Shields and Paul J. Lanzon II breached their fiduciary duty to monitor the Trustee;

      xiii.    The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations; and

      xiv.    The appropriate relief for Defendants' violations of ERISA.

122.   Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid above fair market value and took on an excessive loan for SAC stock, resulting in his being allocated fewer shares of stock, and he continues to suffer such losses in the present because the Trustee failed to correct the overpayment by the Plan.

123.   Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

124.   Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because

adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members, and/or because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

125.   The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.   Declare that Defendant Trustee caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B.   Declare that Defendant Trustee breached its fiduciary duties under ERISA to the Plan and the class members;

C.   Declare that Selling Shareholders knowingly participated in a prohibited transaction with the Plan in violation of ERISA;

D.   Declare that Defendants Peter F. Shields and Paul J. Lanzon II breached their fiduciary duty to monitor the Trustee;

E.      Declare that Defendants Peter F. Shields and Paul J. Lanzon II are liable as co-fiduciaries for Defendant Trustee's breaches of fiduciary duty;

F.      Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

G.      Order reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for SAC stock as of the date of the transaction, to provide the Plan receives that for which it paid including control of SAC where it did not receive a discount for lack of control and did not obtain control of the Company's board of directors under contractual governance provisions, and any other appropriate reformation;

H.      Order rescission of the ESOP Transaction;

I.      Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

J.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that

they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

K.      Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

L.      Remove Defendants as Plan fiduciaries, enjoin them from acting as fiduciaries for any employee benefit plan that covers or includes any employees of SAC or its subsidiaries or members of the Class, and appoint independent fiduciaries in place of Defendants;

M.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

N.      Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

O.      Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

P.      Order Defendants to pay prejudgment and post-judgment interest;

Q.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

R.      Award such other and further relief as the Court deems equitable and just.

                                        Respectfully submitted,

Dated: August 11, 2023                  By: */s/* Perrin Rynders
                                            Perrin Rynders (P38221)
                                            Aaron M. Phelps (P64790)
                                            VARNUM LLP
                                            Bridgewater Place, P.O. Box 352
                                            Grand Rapids, MI 49501-0352
                                            (616) 336-6000
                                            prynders@varnumlaw.com
                                            amphelps@varnumlaw.com
                                            *Attorneys for Plaintiff*

                                            Gregory Y. Porter (*phv pending*)
                                            Ryan T. Jenny (*phv pending*)
                                            BAILEY & GLASSER LLP
                                            1055 Thomas Jefferson Street
                                            NW, Suite 540
                                            Washington, DC 20007
                                            (202) 463-2101
                                            gporter@baileyglasser.com
                                            rjenny@baileyglasser.com
                                            *Attorneys for Plaintiff*