UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD N. BONDS, on
behalf of the Flat Rock Metal
and Bar Processing Employee
Stock Ownership Plan, and on behalf
of a class of all other persons
similarly situated,

        Case No. 23-12045

       Plaintiffs,

        Hon. George Caram Steeh

   v.

RICHARD A. HEETER, CAPITAL
TRUSTEES, LLC, PETER F.
SHIELDS, PAUL J. LANZON II,
and JOHN DOES 1-10,

       Defendants.
_____/

OPINION AND ORDER DENYING IN PART AND
AND GRANTING IN PART DEFENDANTS'
MOTIONS TO DISMISS (ECF NOS. 18, 19)

Defendants seek dismissal of Plaintiff's complaint pursuant to Federal

Rule of Civil Procedure 12(b)(1) and (6). For the reasons explained below,

Defendants' motions are denied in part and granted in part.

BACKGROUND FACTS

This case arises under the Employee Retirement Income Security Act

of 1974 ("ERISA") and involves the creation of an Employee Stock

- 1 -

Ownership Plan. Plaintiff Richard N. Bonds is a participant in the ERISA plan at issue, the Flat Rock Metal and Bar Processing Stock Ownership Plan (the "Plan" or "ESOP"). Defendants Richard A. Heeter and his company, Capital Trustees, LLC, were appointed as the Plan's Trustee.

In November 2020, the Plan purchased one hundred percent of the outstanding shares of SAC Ventures, Inc., which is a holding company for subsidiaries in the steel processing industry. SAC's subsidiaries include Flat Rock Metal, Inc., Steel Dimension, Inc., and Custom Coating Technologies, Inc. The Plan purchased SAC stock from shareholders Peter F. Shields and Paul J. Lanzon II, who are named as Defendants. At the time of the ESOP transaction, Shields was President and a Director of SAC, and Lanzon was Treasurer, Chief Executive Officer, and Director of SAC. Lanzon is also Shields' son-in-law.

Prior to the ESOP transaction, SAC was owned by members of the Shields family and its stock was not publicly traded. SAC is the sponsor and administrator of the Plan, which covers all employees of SAC and its subsidiaries who have completed more than 1,000 hours of service.

As a method for transitioning ownership of SAC away from the Shields family, Shields and Lanzon decided to develop an ESOP. The board of directors of SAC appointed Richard Heeter and Capital Trustees

- 2 -

as Trustee for the Plan. The Trustee had sole and exclusive authority to negotiate and approve the ESOP transaction on behalf of the Plan.

The Plan purchased approximately one million shares of SAC stock from Shields and Lanzon (or their trusts) for approximately $60 million. SAC financed the sale by loaning the Plan the $60 million needed for the purchase, at an interest rate of 1.17 percent. The complaint alleges that the sale was financed by the sellers because they were unable to arrange for bank financing, which would have required due diligence to ensure that the stock was worth the price paid.

Plaintiff alleges that the Plan overpaid for the stock for several reasons. Plaintiff contends that the purchase price should have been discounted to reflect that the selling shareholders retained control of the company. The complaint also asserts that the Trustee's appraisal relied on unrealistic growth projections and dissimilar comparable companies, while failing to take into account the lack of marketability and the issuance of "synthetic equity" that dilutes stock value. Plaintiff alleges that the Trustee's failure to diligently investigate these issues and to negotiate a fair price resulted in the Plan paying an inflated price for the SAC stock. Although the Plan paid approximately $60 million for the stock in November 2020, it was

- 3 -

valued at approximately $3.6 million on December 31, 2020, and $17.1 million on December 31, 2021.

Plaintiffs have asserted the following claims under ERISA: Count I, against the Trustee, for causing prohibited transactions in violation of § 406(a) (28 U.S.C. § 1106(a)); Count II, against the Trustee, for violation of fiduciary duties under § 404(a) (28 U.S.C. § 1104(a)); Count III, against Shields and Lanzon, for equitable relief under § 502(a)(3) for knowingly participating in violations of § 404(a) and § 406(a); and Count IV, against Shields and Lanzon, for co-fiduciary liability under § 405(a)(3). Defendants seek dismissal for lack of standing and failure to state a claim.

<u>LAW AND ANALYSIS</u>

I.   <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations

- 4 -

respecting all the material elements to sustain a recovery under some

viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club*

*Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks

omitted).

II.    Standing

Standing is a jurisdictional requirement: "an essential and unchanging

part of the case-or-controversy requirement of Article III." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal

jurisdiction has the burden of demonstrating the three elements of standing:

> First, the plaintiff must have suffered an "injury in fact" – an
> invasion of a legally protected interest which is (a) concrete
> and particularized, and (b) "actual or imminent, not
> 'conjectural' or 'hypothetical.'" Second, there must be a
> causal connection between the injury and the conduct
> complained of – the injury has to be "fairly . . . trace[able]
> to the challenged action of the defendant, and not . . . th[e]
> result [of] the independent action of some third party not
> before the court." Third, it must be "likely," as opposed to
> merely "speculative," that the injury will be "redressed by a
> favorable decision."

*Lujan*, 504 U.S. at 560-61 (citations omitted).

A facial challenge to the court's subject matter jurisdiction, as

Defendants make here, "questions merely the sufficiency of the pleadings."

*Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816-17 (6th Cir. 2017).

Accordingly, the court accepts the factual allegations in the complaint as true, "just as in a Rule 12(b)(6) motion." *Id.*

Plaintiff alleges that because the Plan overpaid for SAC stock, the Plan and its participants were injured through diminished stock allocations, excessive debt, and losses to individual plan accounts. ECF No. 1 at ¶ 73. Valuations of the stock soon after the sale were significantly less than the price paid by the Plan. These losses were caused by the Trustee's failure to diligently investigate and negotiate the ESOP transaction. Shields and Lanzon authorized the loan from SAC and were centrally involved in the transaction. ECF No. 1 at ¶¶ 44, 49. Plaintiffs assert that the Trustee, with the knowing participation of the selling shareholders, breached his fiduciary duty and caused the Plan to engage in a prohibited transaction. Plaintiffs contend that Defendants are liable to the Plan for the difference between the price paid by the Plan and the fair market value of the SAC shares.

These allegations satisfy the standing elements of injury in fact, causation, and redressability. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) ("Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account," caused by defendants, that is likely to be redressed by a favorable judgment); *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008)

- 6 -

(plaintiffs "suffered injury in that their retirement accounts were worth less than they would have been absent the breach of duty, and this injury was caused, as the plaintiffs have alleged, by the fiduciaries' misconduct").

The primary ESOP case relied upon by Defendants, *Plutzer v. Bankers Trust Co. of South Dakota*, is distinguishable. 2022 WL 596356 (S.D.N.Y.), *aff'd* 2022 WL 17086483 (2d Cir. Nov. 21, 2022). In that case, the plaintiff initially argued that post-transaction equity valuations of the company supported his theory that the plan overpaid for the stock. Subsequently, however, the plaintiff "disavowed" this argument, leaving no concrete allegations of overpayment. Here, Plaintiff alleges that the "stock was revalued at $3,649,046 as of December 31, 2020," a short time after the transaction was completed in November 2020. ECF No. 1 at ¶ 70. Taking the facts in the complaint as true, as the court must at this stage, Plaintiff's allegations raise an inference of overpayment, which is an injury to the Plan and its participants.

Defendants argue that Plaintiff cannot show injury because he cannot substantiate his allegations that the stock was overpriced. This argument goes to the merits of Plaintiff's claim, however, not standing. *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) ("[O]ne must not 'confus[e] weakness on the merits with

absence of Article III standing.'") (citation omitted); *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020) ("There is a difference between failing to establish the elements of a cause of action and failing to show an Article III injury. One is a failure of proof. The other is a failure of jurisdiction. Yes, there can be overlap between the two inquiries. But they are not one and the same."). Plaintiff's general allegations of concrete and particularized injury are sufficient at this stage of the proceedings. *Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

Defendants cite *Lee v. Argent Trust Co.*, 2019 WL 3729721, at *3-4 (E.D. N.C. Aug. 7, 2019) for the proposition that because the plan borrowed 100% of the funds necessary to purchase the stock, it would be expected that the equity value of the stock would be $0 immediately after the transaction. In other words, the nature of the leveraged transaction precludes a finding of injury. But Plaintiff makes no allegation about the *equity* value of the stock immediately after the transaction; rather, he contends that post-transaction valuations, along with flaws in the initial

- 8 -

valuation methodology, raise an inference that the ESOP overpaid. Moreover, for the purposes of standing, the court in *Lee* improperly focused on the merits of the plaintiff's claim, rather than on whether she alleged an injury. For these reasons, the court declines to follow the reasoning in *Lee*. *See Placht v. Argent Trust Co.*, 2022 WL 3226809, at *3 (N.D. Ill. Aug. 10, 2022) (declining to follow *Lee*); *Laidig v. GreatBanc Tr. Co.*, 2023 WL 1319624, at *5 (N.D. Ill. Jan. 31, 2023) (same).

   III.   Count I

   In Count I of the complaint, Plaintiff alleges violations of § 406 of ERISA against the Trustee. Section 406 prohibits plan fiduciaries from causing the benefit plan to engage in certain "prohibited transactions" because these transactions create conflicts of interest. 29 U.S.C. § 1106(a). The purpose of this provision is "to prohibit transactions that would clearly injure the plan." *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)). "Congress adopted § 406 to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their beneficiaries." *Id.*

   Section 406(a) provides in part:

(a) Except as provided in 29 U.S.C. § 1108 [ERISA § 408]:
     (1) A fiduciary with respect to a plan shall not cause the
plan to engage in a transaction, if he knows or should
know that such transaction constitutes a direct or indirect--
          (A) sale or exchange, or leasing, of any property
     between the plan and a party in interest;
          (B) lending of money or other extension of credit
     between the plan and a party in interest;
          (C) furnishing of goods, services, or facilities
     between the plan and a party in interest;
          (D) transfer to, or use by or for the benefit of, a party
     in interest, of any assets of the plan; or
          (E) acquisition, on behalf of the plan, or any
     employer security or employer real property in violation
     of section 1107(a) of this title.

29 U.S.C. § 1106(a). *See* 29 U.S.C. § 1002(14) (definition of "party in

interest" includes employer, owner, officer, or director).

     ERISA provides exceptions to the prohibited transactions rule; for

example, under § 408(e)(1), § 406 does not apply to the acquisition or sale

by a plan of the employer's securities as long as the acquisition or sale is

for "adequate consideration." 29 U.S.C. § 1108(e)(1); *see also Chao v. Hall*

*Holding Co.*, 285 F.3d 415, 425 (6th Cir. 2002). The statute defines

"adequate consideration" as follows:

          [I]n the case of an asset other than a security for which
     there is a generally recognized market, the fair market
     value of the asset as determined in good faith by the
     trustee or named fiduciary pursuant to the terms of the
     plan and in accordance with regulations promulgated by
     the Secretary.

29 U.S.C. § 1002(18)(B). Additionally, under § 408(b)(3), § 406 does not prohibit a loan to an ESOP, if "(A) such loan is primarily for the benefit of participants and beneficiaries of the plan, and (B) such loan is at an interest rate which is not in excess of a reasonable rate." 29 U.S.C.A. § 1108(b)(3). These exceptions were enacted in order to encourage employee ownership of their companies through ESOPs. *Chao*, 285 F.3d at 425.

Plaintiff alleges three violations of § 406(a)(1), based upon the stock sale between the plan and a party in interest (§ 406(a)(1)(A)); the loan between the plan and a party in interest (§ 406(a)(1)(B)); and the transfer of assets from the plan to a party in interest (§ 406(a)(1)(D)). The Trustee seeks dismissal of the claims based upon § 406(a)(1)(B) and (D), but does not challenge Plaintiff's § 406(a)(1)(A) claim.

With respect to the § 406(a)(1)(B) claim, challenging the loan between the Plan and the employer, the Trustee asserts that the exemption set forth in § 408(b)(3) applies and precludes liability. The § 408(b)(3) exemption is an affirmative defense, for which the Trustee carries the burden of proof. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016). A motion to dismiss may be granted based upon an affirmative defense only if "the plaintiffs' complaint contains facts which satisfy the elements of the defendant's affirmative defense." *Estate of Barney v. PNC*

*Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). It is not an ERISA plaintiff's burden to "plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section 408 exemption." *Allen*, 835 F.3d at 676 (citing cases).

The Trustee contends that the complaint establishes that the loan was "primarily for the benefit of participants and beneficiaries of the plan" and carried a reasonable interest rate. *See* 29 U.S.C.A. § 1108(b)(3). To the contrary, the face of the complaint does not conclusively demonstrate that the exemption applies. Plaintiff alleges that the loan financed a transaction in which the ESOP paid an inflated price for company stock, allowing the selling shareholders to divest their holdings. As such, the loan benefited the selling shareholders rather than the Plan. ECF No. 1 at ¶¶ 53-54. Although allegations establishing the absence of an exemption are not required, the complaint nonetheless plausibly alleges that the loan was not primarily for the benefit of the Plan. The Trustee is not entitled to dismissal of Plaintiff's § 406(a)(1)(B) claim based upon the § 408(b)(3) exemption.

The Trustee also seeks dismissal of Plaintiff's claim under § 406(a)(1)(D), which provides that a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of

- 12 -

a party in interest, of any assets of the plan. . . ." 29 U.S.C.A.

§ 1106(a)(1)(D). Plaintiff alleges that this provision was violated by the

transfer of Plan assets to the selling shareholders, in exchange for their

company stock. The Trustee argues that dismissal is warranted because

Plaintiff cannot show the Trustee had "a subjective intent to benefit a party

in interest" with respect to the transfer or use of assets. *See Jordan*, 207

F.3d at 861.

In *Jordan*, the participants of an ERISA plan brought suit against the

plan under ERISA and the Labor Management Relations Act. The

participants' attorneys' fees were advanced by their union. After the parties

settled their dispute, the district court approved the settlement agreement

and awarded the plaintiffs attorneys' fees. However, the district court

determined that the plaintiffs could not reimburse the union for the

attorneys' fees that it advanced, because such reimbursement would

constitute a prohibited transaction under § 406(a)(1)(D), as the transfer of

plan assets to a party in interest.

The Sixth Circuit reversed for several reasons, including that "[t]he

remittance of attorney's fees to the [union] would not benefit the [union] in

the manner intended to be proscribed by the statute." *Jordan*, 207 F.3d at

859. The court explained that a "benefit is defined as an advantage,

privilege, profit or gain," and the union "would not receive a benefit in the context of the statutory framework involved in the instant case inasmuch as the transaction would merely constitute repayment for money already expended by [the union] in support of Plaintiffs' suit against Defendants." *Id.* The court further explained the repayment of attorneys' fees was not the type of "abuse" Congress sought to protect against in enacting § 406(a), "as the transaction will not injure the plan." *Id.*

The *Jordan* court then addressed several other reasons why the transaction was not prohibited by § 406(a), including that the defendants could not show that the fund had a "subjective intent" to benefit the union. *Id.* at 860-61 (citing *Reich v. Compton*, 57 F.3d 270 (3d Cir. 1995)). Plaintiff argues that the *Jordan* court wrongly adopted the subjective intent requirement and that it is, at most, limited to its facts. The *Jordan* opinion is not so limited, however.

Plaintiff points to a subsequent Sixth Circuit case, *Chao v. Hall Holding Co.*, 285 F.3d 415, 442 (6th Cir. 2002), for the proposition that a showing of subjective intent is not required under § 406(a)(1)(D). The *Chao* court noted its concerns with the *Jordan* opinion in a footnote, including that "requiring subjective intent for a violation of § 406(a)(1)(D) is against the great weight of authority. Most courts and commentators have found that

§ 406(a) contemplates *per se* violations." *Id.* at 442 n.12. This observation, although persuasive, is nonetheless dictum, as it was not necessary to the *Chao* decision. Moreover, a panel of the Sixth Circuit may not overrule a decision of a prior panel. "The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision." *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

Accordingly, *Jordan* is binding and controlling precedent, requiring Plaintiff to show that the Trustee had a subjective intent to benefit a party in interest by transferring plan assets. Plaintiff has not alleged that the Trustee had a subjective intent or that the complaint creates a reasonable inference of subjective intent. Therefore, Plaintiff's claim under § 406(a)(1)(D) is subject to dismissal. The court will deny the Trustee's motion with respect to the claims under § 406(a)(1)(A) and (B).

IV.   Count II

Count II of the complaint alleges that the Trustee breached his fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a). This section provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—"

(A) for the exclusive purpose of:
   (i) providing benefits to participants and their beneficiaries; and
   (ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1).

"Consequently, ERISA fiduciaries 'must act for the exclusive benefit of plan beneficiaries.'" *Chao*, 285 F.3d at 425. The duty of loyalty requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Id.* (citations omitted). The duty of prudence "imposes 'an unwavering duty' to act both 'as a prudent person would act in a similar situation' and 'with single-minded devotion' to those same plan participants and beneficiaries." *Id.* (citations omitted); *see also Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861, 867 (6th Cir. 2013). In addition, the Plan itself requires that "[a]ll purchases and sales of Company Stock shall

be made at a price not less favorable to the Trust than fair market value as determined in good faith by the Trustee." ECF No. 1 at ¶ 51.

Plaintiff alleges that the Trustee breached the duties of loyalty and prudence and failed to act in accordance with plan documents, in violation of § 1104(a)(1)(A), (B), and (D). The complaint alleges that the Trustee breached these duties by failing to thoroughly investigate the merits of the company stock purchase. It also alleges that the Trustee would receive ongoing fees if the ESOP transaction was approved, and that the Trustee depended on referrals by other providers in the ESOP business, such as Greenwich Capital Group LLC, the sellers' advisor, which appointed him. ECF No. 1 at  ¶¶ 46-47, 49-50, 71. These allegations are sufficient to state a claim for breach of the duties of loyalty and prudence. *See Chao*, 285 F.3d at 434 (duties of loyalty, prudence, and exclusive purpose breached by defendants who did not properly investigate or negotiate stock sale).

Although the Trustee suggests that Plaintiff must allege "self-dealing" in order to state a claim for breach of loyalty, such a claim is not so narrowly defined. *See id; Pipefitters*, 722 F.3d at 869 ("ERISA's duties of loyalty and care are undeniably broader than the prohibition against self-dealing, [and require] acting with the 'care, skill, prudence, and diligence' 'with an eye single to the interests of the participants and beneficiaries.'");

*see also Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000) (the duty of loyalty inquiry concerns "the extent to which the fiduciary's conduct reflects a subordination of beneficiaries' and participants' interests to those of a third party").

With respect to the duties of loyalty and prudence, and the failure to act in accordance with plan documents, the Trustee argues that Plaintiff has not alleged facts impugning the valuation process, but only "hypothetical critiques." The complaint alleges several reasons why Plaintiff believes the Trustee's valuation of the stock was flawed and that the ESOP paid an inflated price due to the Trustee's improper investigation. ECF No. 1 at ¶¶ 59-70. These allegations are sufficiently specific to comply with Rule 8 notice pleading standards. *See Allen*, 835 F.3d at 678 (holding in ESOP case that "[i]t was enough to allege facts from which a factfinder could infer that the process was inadequate" and "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story"); *Braden,* 588 F.3d at 598 ("No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."). The court will deny the Trustee's motion to dismiss as to Count II.

V.      Count III

Count III seeks equitable relief against Shields and Lanzon pursuant to ERISA § 502(a)(3), to redress their knowing participation in the violations of § 404(a) (breach of fiduciary duty) and § 406(a) (prohibited transaction). Section 502(a)(3) authorizes a "participant, beneficiary, or fiduciary" of a plan to bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA Title I. 29 U.S.C. § 1132(a)(3); *Harris Trust & Sav. Bank v. Salomon Smith Barney*, *Inc.*, 530 U.S. 238, 241 (2000). With respect to his claim that Defendants knowingly participated in a transaction prohibited by § 406, Plaintiff must allege that these defendants "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris*, 530 U.S. at 251.

Shields and Lanzon argue that Plaintiff has not sufficiently alleged that they knew or should have known that the stock was overpriced and that the transaction was prohibited under § 406(a). Plaintiff alleges that Shields and Lanzon were officers, directors, and more than ten percent shareholders in SAC, who were centrally involved in the transaction, including directing the preparation of financial information used to value the stock. They were selling a family business: Shields was the founder of the company, and Lanzon is his son-in-law. These allegations regarding

- 19 -

Defendants' roles and participation in the transaction are sufficient at this stage to infer that Shields and Lanzon knew or should have known the stock's true value. *See, e.g., Placht*, 2022 WL 3226809, at *13; *Lysengen v. Argent Trust Co.*, 2022 WL 854818, at *5 (C.D. Ill. Mar. 22, 2022) ("These shares were not just an anonymous piece of an investment portfolio, but a family business where the selling shareholders must necessarily have been involved in the details of the sale.").

With respect to Plaintiff's claim that they knowingly participated in a breach of fiduciary duty in violation of § 404(a), Defendants argue that such a claim is not cognizable under ERISA § 502(a)(3). Defendants assert that although *Harris* recognized a claim for knowing participation in a transaction prohibited by § 406(a), *Harris* should not be extended to authorize claims against non-fiduciaries for knowing participation in a breach of fiduciary duty under § 404(a). The reasoning in *Harris*, however, is not limited to § 406(a) claims. The Court relied upon the language of § 502(a)(3), which provides that a plan participant, beneficiary, or fiduciary may bring suit: "(A) to enjoin *any* act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress *such* violations or (ii) to enforce *any* provisions of this subchapter or the terms of the plan." 29 U.S.C.

§ 1132(a)(3) (emphasis added). The court held that "§ 502(a)(3) itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Harris*, 530 U.S. at 245. The Sixth Circuit has recognized that although in *Harris* "liability was premised on the nonfiduciary's role as a party-in-interest to the prohibited transaction, though the Court's rationale would seem to apply to other nonfiduciaries as well." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 486 (6th Cir. 2001); *see also Rudowski v. Sheet Metal Workers Int'l Ass'n, Loc. Union No. 24*, 113 F. Supp. 2d 1176, 1180 (S.D. Ohio 2000) ("Given that section 406(a)(1) was enacted to supplement and to clarify section 404(a)(1), this Court finds that a violation of section 404(a)(1) would support a claim under section 502(a)(3) as readily as would a violation of section 406(a)(1)."). Although the Sixth Circuit has not directly addressed the issue, the court agrees that under the reasoning of *Harris*, a plaintiff may seek equitable relief against a nonfiduciary for knowing participation in a breach of fiduciary duty under § 404(a)(1).[1] Defendants have not persuasively articulated why, under

---

[1] Defendants' out-of-circuit authority is distinguishable in that it addresses the availability of money damages rather than equitable relief, or does not fully consider the implications of *Harris. See Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321-23 (2d Cir. 2003) (issue was whether remedy sought was properly characterized as restitution, and whether § 502(a)(3) permitted money damages); *Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011) (holding no claim against "nonfiduciaries charged solely with

§ 502(a)(3) and *Harris*, knowing participation in a § 404(a) violation should be treated differently than knowing participation in a § 406(a) violation. The court declines to dismiss Count III on this basis.

Defendants next argue that Plaintiff has not requested true equitable relief, but money damages, which are not authorized by § 502(a)(3). Plaintiff alleges that Defendants "profited from the prohibited stock transaction in an amount to be proven at trial, and upon information and belief, they remain in possession of assets that belong to the Plan." ECF No. 1 at ¶ 105. Plaintiff seeks relief including "disgorgement or restitution of ill-gotten gains," and reformation or rescission of the transaction. *Id.* at ¶ 106.

"[B]oth disgorgement and equitable restitution may be pursued through § 1132(a)(3). Disgorgement is an equitable remedy that 'deprive[s] wrongdoers of their net profits from unlawful activity.' Like disgorgement, equitable restitution 'seeks to punish the wrongdoer' by stripping him 'of ill-gotten gains.' Relief in the universe of transferred assets is generally

---

participating in a fiduciary breach," but does not examine *Harris*); *cf. Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 90 (3d Cir. 2012) (calling reasoning of *Renfro* into doubt and noting that several courts of appeal have determined that "the *Harris Trust* reasoning is not tethered to the limitations of § 406(a)"); *Halperin v. Richards*, 7 F.4th 534, 553 (7th Cir. 2021) (observing, without deciding, that "*Harris*'s reasoning would seem to extend equally to a § 404 fiduciary duty claim").

limited, however, by an important caveat – the tracing requirement. That is certainly true for equitable restitution, where an award must trace back to 'particular funds or property in the defendant's possession.'" *Patterson v. United HealthCare Ins. Co.*, 76 F.4th 487, 497 (6th Cir. 2023).[2]

Defendants rely upon *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 481 (6th Cir. 2001), in which the court determined that the plaintiff could not proceed under § 502(a)(3) because he was not seeking equitable relief. The plaintiff in *Helfrich* wanted the defendant to "compensate him for losses he suffered because PNC Bank failed to transfer his assets to higher performing mutual funds." *Id.* The court determined that the requested remedy "constitutes money damages, not restitution." *Id.*

Here, Plaintiff is alleging that the plan overpaid for stock. The overpayment may constitute a "specifically identified fund" in Defendants' possession that "is potentially susceptible to recovery under § 1132(a)(3), even if commingled with other funds." *Patterson*, 76 F.4th at 498. At this stage of the proceedings, Plaintiff has alleged "a colorable equitable claim." *Id.* The court will deny Defendants' motion to dismiss Count III.

---

[2] Plaintiff seeks leave to file a sur-reply, because Defendants raised the traceability requirement for the first time in their reply brief. The court agrees that the sur-reply will assist in its review of the motion and will grant leave to file it.

VI.   <u>Count IV</u>

Count IV alleges that Shields and Lanzon are liable as co-fiduciaries under ERISA § 405(a). *See* 29 U.S.C. § 1102(a). Circumstances giving rise to co-fiduciary liability include knowingly participating in a breach of fiduciary duty. 29 U.S.C. § 1105(a). The statute defines a fiduciary as one who "exercises any discretionary authority or . . . control respecting management of [a] plan, or . . . disposition of its assets"; and who "has any discretionary authority or . . . responsibility in the administration of [a] plan." 29 U.S.C. § 1002(21)(A)(i), (ii). The threshold question in ERISA fiduciary breach case is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Defendants argue that Plaintiff has not sufficiently alleged facts establishing their fiduciary status with respect to the plan or the transaction. Plaintiff alleges that Shields and Lanzon were fiduciaries based upon their roles as directors of SAC, were named fiduciaries under the plan, had discretionary authority over plan assets and management, and were fiduciaries with respect to their appointment of the Trustee. ECF No. 1 at ¶¶ 23, 44, 47-48. Plaintiff further alleges that Defendants were "centrally involved in conceiving of, facilitating, and executing the Transaction," that

- 24 -

they had a duty to monitor the Trustee's performance, and that Lanzon signed the ESOP Trust Agreement. It is "well-established that the power to appoint plan trustees confers fiduciary status." *Stockwell v. Hamilton*, 163 F. Supp. 3d 484, 490-91 (E.D. Mich. 2016) (quoting *Liss v. Smith*, 991 F.Supp. 278, 310 (S.D.N.Y.1998) (citing cases)); *see also* 29 C.F.R. § 2509.75-8 (when the board of directors are "responsible for selection and retention of plan fiduciaries," they "exercise discretionary authority or discretionary control respecting management of such plan and are, therefore, fiduciaries with respect to the plan"). Plaintiff has sufficiently alleged that Defendants were fiduciaries; the extent of their fiduciary duties with respect to the transaction is a matter requiring factual development that is not amenable to a motion to dismiss. *See generally Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) (unless the facts are undisputed, "fiduciary status under ERISA is a mixed question of law and fact").

Defendants also argue that Plaintiffs have failed to allege that they had actual knowledge of, enabled, or participated in a fiduciary breach. As discussed above, Plaintiffs have plausibly alleged that Defendants had knowledge of the relevant facts surrounding the allegedly prohibited transaction, including that stock was overvalued. *See* ECF No. 1 at ¶ 102. Plaintiffs further allege that Defendants enabled the Trustee's breach of

fiduciary duty by providing him with unreasonably optimistic financial projections, by failing to inform him of material information about the true value of SAC, and by failing to monitor his performance. These allegations are sufficient to state a claim of co-fiduciary liability. *See Stockwell*, 163 F.Supp.3d at 491("[t]he power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance").

## CONCLUSION

Defendants generally take issue with whether Plaintiff's claims are factually supported, rather than whether his allegations are sufficient to survive a Rule 12(b)(6) motion. Except for Plaintiff's § 406(a)(1)(D) claim in Count I, the court finds that Plaintiff's complaint satisfies basic pleading standards. Therefore, IT IS HEREBY ORDERED that the Trustee's motion to dismiss (ECF No. 19) is GRANTED IN PART AND DENIED IN PART, consistent with this opinion and order. IT IS FURTHER ORDERED that Shields and Lanzon's motion to dismiss (ECF No. 18) is DENIED, and Plaintiff's motion for leave to file a sur-reply (ECF No. 25) is GRANTED.

Dated: May 8, 2024

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on May 8, 2024, by electronic and/or ordinary mail.

s/Lashawn Saulsberry
Deputy Clerk